Oral argument not to exceed 15 minutes per side. Mr. Cowan for the appellant. Good morning. Good morning. May it please the court, my name is Chris Cowan. I represent Mr. Ushery. I'd like to reserve four minutes for rebuttal if I may. All right. To start out, taking a cue from a comment the court made in an earlier argument, I want to adopt the arguments that I've raised in my brief and my reply brief as well and focus on the first argument this morning, the Rule 11 violation. Respectfully, Rule 11 creates a bright line prohibition against judicial participation in plea negotiations. It's a prohibition against all forms of participation in plea negotiations. In this case, the judge violated Rule 11 in four ways when it participated in the plea negotiations in this case. The first way was by instigating the plea conference or the plea negotiations during the teleconference. On that one, so they have a rearrangement. That's technically what it is, right? A rearrangement. And I guess the way I would have looked at the case is I would have said, boy, it's really hard to blame the judge for doing that. I mean, at some point, you've got to decide. There's going to be a trial or there's going to be a plea. And the Speedy Trial Act requires that. I mean, there's a lot of reasons you have to do something. So the rearrangement, I just can't see how that's problematic. And I really would say to the extent there is a problem here, it was initiated by the prosecutor. Now, I don't think it's fair to accuse Judge Bunning of doing this and orchestrating this to start a plea negotiation. I think I would guess from the record he was caught by surprise by what happened when the prosecutor volunteered, well, we don't have to have a plea waiver. Then it seems to me, arguably, he should have said, okay, you guys can have the courtroom. I'm out of here. I think I understand that way of thinking about it. But I'm really struggling with anything Judge Bunning did wrong up to that first comment by the prosecutor, which suggests to me the prosecutor made the initial mistake. What I would submit to the court, and I respect your point, it is not the strongest of the four violations, but it nonetheless is a violation to express an interest in having the parties negotiate a plea hearing. The court, what it said, in its own words, was to have a hearing to discuss with Oshery whether he's going to plead guilty or go to trial. But that exact statement is okay. You're allowed to decide whether to go to trial or have a plea. That's not, that's neutral. The context that I took it was, it was a hearing to discuss with them. I took it a little bit further, looking at everything else that went on. But in and of itself, suggesting that you need to have a plea discussion suggests that the judge wants a plea. Now, standing by itself, maybe that's not enough, and maybe that could be innocuous enough. But then the judge opens up the August 14 hearing, saying we had a teleconference in which we discussed your honoring a guilty plea, and today is your drop-dead date. At that point, the defense attorney said, Judge, Mr. Oshery has not agreed to plead guilty. The judge had a couple options at that point. He could have, just like you suggested, he could have either continued the case, he could have left the courtroom and let counsel discuss the case while he's there, he could have sent counsel outside to discuss the case, he could have extended the pretrial cutoff. He could also have done the one thing I know for sure your client didn't want, which is to say, okay, trial's next week. And then hit the gavel and walked out. And that would be exactly what your client didn't want. Well, not necessarily. I can tell you this, my client felt like he was pressured into making this plea. Well, that's not what the record says. The record, the judge says three different times, look, nobody's trying to muscle you into anything. You have a right to go to trial. At one point he asks your client, have you had enough time to consider it, and your client says yes. Well, actually, no, that's not what he said. What he said was, had you had enough time, he said not really, and then the judge chatted him and said, I'm trying to get to the bottom of your hesitation to plead guilty. Then the judge went on to say, sometimes you have to make a Hobson's choice. That's where all your choices are bad. What I take from that, the judge really should not have said that. It's analogous to the IECA case that I cited where the judge said, your best chance is to plead guilty and cut your losses. Just help me out with that. I'm willing to accept your intuition that Hobson's choice is a bad thing to say, but I'm not sure I understand why. I mean, it is true, sometimes, not sometimes, very often, criminal defense do have a tough choice. It is just a tough choice, and they're both bad. No one wants to be tried and found guilty of a crime. Bad choice A. No one wants to plead guilty to a crime and go to jail. Bad choice B. So why is that not a neutral, accurate statement of the situation? They are both tough choices, and that's why you really ought to think carefully about what to do. Let's back up a little bit. In the context of the sequence of events that occurred, what happened consistently throughout the proceedings is Oshery has expressed one concern, the length of his sentence. Ultimately, what happened is, with what you said, the prosecutor's comment about the appeal waiver, what happened was the conversation shifted to a focus on the appeal waiver, which the prosecutor said he would strike. And then the judge said, very good. And then the focus shifted to the forfeiture. Defense attorney said we'd have to litigate forfeiture. He didn't say anything about baseball cards. The person that mentioned baseball cards was the judge. It's understandable, given his background. You probably know him better than I do, but nonetheless, it narrowed the focus. The prosecutor said, judge, if it makes a difference. He didn't say it to the defense attorney or to Oshery. He said it to the judge. He said, judge, if it makes a difference, we'll give him the baseball cards back. And then they shifted back over to... This is hurting your client all the while. I beg your pardon? This is all hurting your client all the while. Well, it's narrowing the focus away from his chief concern. And that is, his chief concern is the length of his sentence. And ultimately... But he didn't want the appeal waiver. He didn't want to give up the baseball cards. Those were good things. I mean, no one can say it wasn't good that that happened. I agree with you the judge should not have stayed in the room. I agree with that. I do agree with that point, just so you understand. But we're also here trying to figure out, you know, there's no objection. And now exactly what do we do with this odd fact sequence? It is an odd fact sequence. I want to give you that. But here's the thing. The challenge with this is that his concern was the length of his sentence. And then all of a sudden, the baseball cards get brought up, which is something he didn't bring up. It's something the judge brought up. And that becomes a modification. But that was not inaccurate. His counsel then said, oh, he does care about the baseball cards. But here's the thing. So in other words, that's not made up. Right. But the problem is the narrowing of the focus. There's a quote from the Herald decision. It says, Statements and suggestions by a judge are not just one more source of information to plead negotiations. They are indications of what the judge will accept, and one can only assume that they will quickly become the focal point of further discussions. And that's what happened here. It's not so much that these may or may not be good terms. It's that they became the focal point. And then on top of that, with the timing of everything, the guilty plea occurred on the heels of this. The ink was literally, or figuratively if not literally, wet on the modifications. As Oshry was walking up to the podium, the judge said on the record, they're initialing the changes. And here's the thing with the timing. Twice, Oshry said he had problems understanding these two different things. First, during the forfeiture part, he said, I don't know what's going on. And the defense attorney interrupted him and said, Judge, I think we have an agreement on the forfeiture. Then, on the appeal waiver, Well, that seems like ineffective assistance, just to be clear, right? I mean, that's defense counsel's actions, and the question is whether he was serving his client. But it's also participation. On the appeal waiver later on Defense counsel can participate in plea negotiations. That just, that has to be right. I agree with the defense counsel can, but the judge participated, and it's the coercive effect of the judge's participation in the plea discussions that is the problem. It's an argument that the defendant said he didn't know what's going on, and his attorney hushed him up and said things are in order. And the fact that the judge, that put the judge on notice that he needed to inquire as to what the defendant meant by the statement that he didn't know what was going on, notwithstanding the defense attorney glossing over the statement. It would seem that the judge should have been on notice at that point that the defendant wanted to interpose an objection or to say that something was wrong about his willingness to accept the plea. I'm not quite sure I understand. Well, what I'm asking is, it would seem then, and maybe you're not making this point, but that when the defendant said he didn't really know what's going on, wouldn't that statement have placed a burden on the court to satisfy the court that he did know what was going on or to clarify what the objection or problem was, notwithstanding that the defense attorney had said that things are in order or tried to gloss over it, keep the colloquy going to disregard the statement from the defendant. I agree with you. The court should have done that. And then let me just touch on the appeal waiver. So the forfeiture, he says that. Appeal waiver later on down the road, it's pretty clear he didn't know what that really meant because when he's talked about his appeal, he said, and frankly he still says it today, I want to appeal everything. I want to appeal my state case. I want to appeal my federal case. He didn't understand what it meant. He didn't understand. He asked for more time, and the judge chided him and said, why do you need more time? But you had a situation where the defendant was saying he didn't want to go to trial. He wanted a plea, but he wasn't sure he wanted the plea that was being offered because he didn't want to go to jail forever or for an extended time as he thought he would do if he took that plea. So your client didn't want the plea, but he also didn't want to go to trial. What should the court have done under those circumstances? I mean, I know your argument is that the judge shouldn't have been participating in the plea negotiation anyway, but in light of these conflicting statements from the defendant, what should the judge have done at that point? My time has expired. You can answer. You can answer. May I ask a question? Yes. All right. I think what you're suggesting is, in effect, the defendant was filibustering the proceedings by not- No, I'm not saying that he was filibustering. I'm saying he had two conflicting goals, two conflicting choices, just as the judge said he was given this absence choice. But in light of the fact that he was conflicted, he was reluctant to plead. So what, if anything, should the court have done to manage that situation? One of two things with a follow-up on that. Go to trial or adjourn for further plea discussions outside of his presence. And I would submit that- As to the first option, though, that isn't – to this day, that's not what he wanted. That's a funny theory of prejudice, right? I mean, another way of looking at Judge Clay's question is, okay, fine. Let's say there were some problems here, but we still have to figure out whether it's reversible. And forget whether it's harmless air or plain air. Just don't even think about that. But he's still not saying, I would withdraw the plea. So it's really funny to think option A was good, that that would have been a good outcome here. Maybe the best answer is option B, and that's your real answer to Judge Clay, and that's the most effective answer. Well, tough luck. He can't participate. He should have left the room no matter what. I guess the point with regard to option A is that if you can't reach a plea deal, it has to go to trial, whether the defendant wants to go to trial or not. That's what I'm getting from your saying that option A is an option. So he either had to go to trial or there had to be further negotiation. I would say I know of very few federal defendants that actually, so it's a point without a distinction among the other cases, that actually want to go to trial, given the percentage of resulting convictions and the percentage of resulting guilty pleas. As far as there's always a reason to, how do you put it, a reason to look to try to come up with a plea agreement. But continually coming back and extending the plea date and bringing up plea negotiations expresses an interest in pleading guilty that is beyond the scope of the rule. And what I would say is that with Mr. Oshry, respectfully, I understand the court perceives him as wanting a plea deal. Wanting a plea deal and agreeing to a plea deal are two entirely different things. Pre-plea, the judge had no role on it. It should not have been there. All right. Thank you. You'll have your four minutes rebuttal. Morning. Morning. May it please the court. My name is Dan Goodman. I'm with the United States Department of Justice representing the Appalachian United States of America. The district court did not impermissibly participate in the discussions that led to Mr. Oshry's guilty plea. What I get from the record is there was no plea deal arrived at that was agreeable to the defendant. However, the defendant did not want to go to trial. That much is evident. But if the defendant didn't clearly agree on the record with the plea deal, and this is against the backdrop of the judge perhaps impermissibly being involved in the plea negotiations in the first place, wouldn't the proper course of proceeding have been for the judge to say that I'm not going to accept a plea deal, there has to be further negotiation, or else simply set a trial date and proceed that way? Well, the district court definitely did, as he said, have an obligation to move its criminal docket along. It was Mr. Oshry's counsel No, not if a plea deal can't be reached. He's not supposed to take a plea deal. I don't care what his docket is. Move the docket along either in terms of accepting a plea deal or in terms of setting a trial date. And by filing a motion for a rearrangement, counsel had indicated that he wanted to plead guilty. Then they show up at the hearing and defense counsel says, no, we're not at that point yet. Although we have negotiated and have a written plea agreement, Mr. Oshry is not yet willing to sign on to it. Now the court could then have gone to trial, your option A, terminated the hearing. But as you all point out, that is not what Mr. Oshry wanted. And in fact, because we think we're under a plein air standard of review, if you get to the third prong of plein air, Mr. Oshry clearly has not demonstrated that but for any impermissible participations in the plea negotiations, he would have gone to trial because he made it clear he was going to lose a trial. He did not want to go to trial. Okay, but there came a time when the defendant said he really didn't know what's going on. And the court didn't elicit what he meant by that. His attorney didn't inquire as to what he meant by that. The attorney just interposed to the court that things are in order, and the court and the defense attorney proceeded with the plea. That seems problematical. I think at most points throughout this August 14th hearing, the district court did a very admirable job of answering Mr. Oshry's questions and concerns. When he said, I'm not sure I've had enough time, what would more time do for you? In a solicitous way, I think... You're just focusing on the good things. But I mean, don't you think it's pretty fair for us to say that I don't think it was a bad idea to have a rearrangement. I don't think a single thing happened wrong until the prosecutor inserted this idea of getting rid of the plea waiver. In other words, you can't call that anything other than a negotiation at that point. And I guess I'm having a hard time understanding why the government wouldn't agree that once that happened, the right thing for the court to do was to leave the situation. I mean, he didn't have to admonish anybody. But don't you agree he shouldn't have stayed there after that? First of all, I wouldn't put it on the prosecutor because before the prosecutor said anything, it was Mr. Olig, the then counsel for Mr. Oshry, who said... Well, the parties, the lawyers. I would say the lawyers, plural. Because the government could have said in response, I mean, I think in retrospect, I'll bet that government lawyer, who is not you, in retrospect wishes he or she had said, well, in light of that point, it probably makes sense for us to talk a little bit outside the presence of the judge. That would have been the right thing to do for the government lawyer, I think. Don't you agree? I mean... That certainly would have made it easier and would have been a good thing to do. So if that's true, don't you think we need to say that once this kind of thing happens, however capricious it is that it does happen, courts need to be pretty vigilant about stepping out of it, right? And now that speeds up the plain air, harmless air debate, but I'm just saying I would have thought we'd have gotten agreement from you on that point. I think that this case is different from those cases, really all the other cases in which the courts have participated in plea agreements, whether the government has ultimately won them or not, in all those cases it was really the court that was pushing a plea deal. So maybe we should say best practices, maybe I shouldn't say it's necessarily a violation, but surely best practices are... Assuming that there was time on the court schedule, I think it would have been a good idea, a best practice for the court to say, look, you're still negotiating, why don't you all step outside for X minutes and see if you can work this out among yourselves. I would like that solution, Your Honor, but it is hard to fault the district court here because he's been through this whole process once before. In July it was the exact same thing. He thought at the first rearrangement that there was going to be a plea deal. The counsel comes in and says, no, Ms. Drusherie has decided not to accept the plea deal. In fact, I want a new counsel, and the court goes along, appoints the second defense counsel, resets everything. Now the court is here again, the speedy trial clock is ticking, the government has to prepare, the court sort of wants to either set a pretrial and get the trial date firmed up or he wants a negotiation, and the court, yes, I agree, could have and probably should have said, let's see if we can have half an hour to work out the details because you've come in here saying there's no plea agreement to which Ms. Drusherie will agree to, but under the circumstances, I don't think that the district court, with the possible exception of the baseball cards, actually injected himself into pushing the plea agreement one way or the other. He remained a neutral arbiter rather than... In view of the Hobson's choice statement, do you think, I mean, I think that's one of their arguments, that that is where he seems to be putting a thumb on the scale of I'm for a plea? I don't think so, Your Honor. I mean, I agree, I don't like the language in this context, Hobson's choice, but I think what the district court is doing, and it's a proper function of the district court, is trying to explain to Ms. Drusherie how things work in the federal court, that he either does have to make a commitment to going to trial, which the court is perfectly willing to do, or he has to make a commitment to pleading guilty, and the court is trying in perhaps layman's terms, or at least not legalese, to help Ms. Drusherie reach the point where the court can move the case forward. And I think that is an appropriate function of the district court. It is a delicate line in this instance between not participating in the plea negotiations, not pushing him one way or the other, but still moving the case forward and getting either your trial date or your plea agreement. But Hobson's choice, by its very nature, isn't pushing him one way or the other. It's a comment, although, as I say, I don't like the choice of words. It's not showing that one choice is better, plea is better than trial. I think the court was not trying to do that, and the parties' attorneys were also saying, no, this is not a plea negotiation. The parties, too, were trying to walk that delicate line of getting a resolution one way or the other as to how the case was going to proceed going forward without violating Rule 11C1. Did the defendant ever move to set aside his guilty plea? Not that I'm aware of, Your Honor. You'd think the defendant would have a better case if three days later he had time to think and said, no, I made a mistake, I was pressured into it, but that didn't happen. It's certainly not on my record, Your Honor. Of course, Bob, that could have depended upon whether his lawyer was even listening to him, since his lawyer wasn't necessarily always listening to him even during the plea colloquy. I mean, the fact that nothing was filed, we wouldn't really know why that was, whether there was a breakdown in communication with his lawyer or what was going on. Well, of course, sentencing several months later, if there were some problem with the prior hearing, perhaps that would have been at least an opportunity to bring it up, but it was not brought up there either. There's also 2255. I mean, if ushery asked to withdraw and the lawyer didn't, that's an easy 2255. Well, there has not been a 2255 filed in this case, Your Honor. That is certainly a vehicle that a defendant can use, but there has been no 2255 filed to this date. That wouldn't typically be done until after this appeal. Well, that's right, Your Honor. I'm not encouraging a 2255, but I'm acknowledging that that is always a possibility. What the trial judge did here is very close to the line of whether it is or is not a violation of Rule 11. I mean, it's a very close question. As you say, better practice would have been probably to say, look, you go out in the hallway and talk about this some more. It seems like the government's strongest case on this might be more that, look, under the plain error standard, it's just no substantial harm to the defendant because there's nothing in the record indicating he ever intended to go to trial. Certainly, the third prong of the plain error is where I think we would win, even if the court did find, contrary to our argument, that there was error and that the error was plain. I think the Corey George case from 2014, which was non-presidential from this court, as well as the Davila Court on remand to the 11th Circuit or the Castro case of the 11th Circuit, all those cases make clear that there has to be something in the record for the defendant to show that, but for any Rule 11c1 error, that the defendant would have opted to go to trial. As you all have noted, on more than one occasion, Mr. Ushery in this instance indicated that he did not want to go to trial. He was just concerned about the career offender. He was wondering how the case got transferred from being a state case to the federal court. One of the ironies of this case is, to me, the real truth here is the best thing that could have happened to him in the way he was prejudiced is to be able to withdraw the plea, have new plea negotiations, and have Judge Bunning preside over them again and get the prosecutor to get rid of more things than the plea. That strikes me as the most likely outcome that could help him. But, of course, that is not the way to correct a Rule 11 error. That is correct, Your Honor. I agree with that characterization. Unless there are any other questions on the remaining issues, we ask that the judgment of the district court be affirmed. All right. Thank you. Thank you. Any rebuttal? Yes. I want to address the predisposition to plea comment that has occurred thus far in the arguments. In the PINA case, the same argument was made, and this is what the court said. The government maintains that even if the district court impermissibly participated in plea discussions, that error did not affect PINA's substantial rights because he had already decided to plead guilty. As PINA notes, however, plea negotiations were merely ongoing, and the parties had disclosed no terms to the court. This distinction is crucial. In that case, after all this happened, did the defendant move to withdraw the plea? In most of the cases I cited, the defendant did not move to withdraw the plea. How about that case? In this case, actually, in this case, he did move to withdraw the plea but did not file an objection. And I believe the motion to withdraw the guilty plea was due to a conflict of interest with counsel. I don't want to misstate that, though. But it was not a rule of an objection to the plea. Well, anyway, it shows the state of mind of not being – the key point of prejudice here is a plea that you should not have entered. And so it seems to me definitely part of the calculation. You may be right, it's not dispositive, but it does seem to be part of the calculation. I don't necessarily disagree, but having said that, I submit that it's a point without a distinction because every federal case, the defendant is going to be in that position. Every federal case, they're going to be looking at hedging their bets, or most federal criminal cases that I'm aware of. You know, most of the cases I've found where the defendant, where the judge gets involved and tangled in Rule 11, it's usually the comment, the pressure is greater. I mean, in Davila 2, the magistrate judge urges the defendant to, quote, go to the cross, accept responsibility, and plead guilty because, quote, there may not be a viable defense. Now, that didn't happen here with Judge Bunning, did it? That was a little bit of bravado. That being said, the Supreme Court said four different times that that was three months before by a magistrate judge and not the person that took the plea, the district court judge. This was a district court judge on the heels of the case, and even the government in Davila, and even the Supreme Court suggested that that creates an inference of prejudice. I might add, on the predisposition point, in Kyle and a number of other cases, there are instances where the judge rejected plea agreements. They obviously had a predisposition to plead because they signed a plea agreement. And then they came back, and the judge violated Rule 11, the subsequent plea agreement that was presented. And in the Kyle case, that was the Sixth Circuit case, no motion to withdraw objection to Rule 11. In the Yinka case, which I cited, the Fifth Circuit case, the defendant also vacillated back and forth between am I going to plead or am I not going to plead? So I'll submit that a defendant seriously considering to plead doesn't mean that that's sufficient. It's a consideration, sure. But is it enough? No. Is it dispositive? I submit that it's not. But, I mean, just to follow up on Judge Gilman's point, and I guess it's a thought I have as well, I mean, I think the government's accurate when they say most of these cases where the defendant wins, it really is fair to look at the transcript and say that judge is putting a hand on the scales in favor of a plea, right? I mean, that is clear. That is what most of the cases look like. That seems to be the key theme. And I think here, I know you're arguing that happened. But I guess what strikes me is I just wonder if it's really a plain air, emphasis on plain, because it's just a funny case the way it happened. It doesn't seem like he had any bad motives, the judge, that is, before the rearrangement. And it's just a question of what he did on the fly as things happened. And I submit you mentioned bad motives. That's not a factor in this case. And I cited that in my brief. I don't have the statement. Okay, but how about the point about whether this air was plain because it's not as clear a case where the judge is saying, I want you guys to negotiate this. May I answer the question? Yes, sure. Okay, in Davila, there were, in fact, no discussions whatsoever. So the fact that there has to be an overture to actually discuss the case, that's one thing. But here, simply instigating the plea discussions alone is enough. And there's precedent for that that I did cite in my brief. Beyond that, the judge then shaped or narrowed the scope of the negotiations by bringing up baseball cards, which were never mentioned by anybody but the judge, and then by ratifying, effectively striking the appeal waiver, saying, you know, he doesn't have to appeal. Judge, we can strike it. Okay. Those were two terms that ushery, I submit, did not understand. The judge never came back, as Judge Clyde, you indicated, never came back and asked if any understood. And another point that I mentioned in my reply brief, the judge never even said you have a right to persist in your plea.  The judge never said you have a right to persist in your plea. Okay. As it is. So you have this immense pressure. And whenever a judge says, I've got the discretion to sentence you, and all your choices are bad, in my mind, I think that's enough. Well, one thing that's being missed here is the rule and the cases are clear that the judge is not supposed to get embroiled in plea negotiations whether he appears to be putting his hand on the scale or not. He's just not permitted to do that. No. And that's why the first part, the instigation, becomes a problem because he sets the venue for the participation to occur. All right. Unless you have something more and you're out of time. Vacate and reverse the conviction. Thank you very much. Mr. Cowan, I see that you're appointed under the Criminal Justice Act. So we know you do that as a service to the court, and the court would like to thank you for your representation. You did a fine job. Thank you. Case is submitted, and you can call the next case when you're ready.